IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRETT RATNER,<br><br>Plaintiff,<br><br>vs.<br><br>MELANIE KOHLER and JOHN and/or JANE DOES,<br>Defendants. | CIVIL NO. CV 17-00542 HG-KSC<br><br>MEMORANDUM IN SUPPORT OF MOTION |

1555598_5

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I. PRELIMINARY STATEMENT .......... 1

II. STATEMENT OF FACTS .......... 7

III. ARGUMENT .......... 10

A. The Complaint Must Be Dismissed Pursuant to Rule 12(b)(6) .......... 10

1. The legal standard for adequately pleading a defamation claim .......... 11

2. Mr. Ratner's Complaint fails to plausibly allege actual malice .......... 16

B. Mr. Ratner's Complaint Should Be Dismissed Under California's Anti-SLAPP Statute .......... 19

1. The Court should apply California's anti-SLAPP statute .......... 21

2. Mr. Ratner cannot meet his burden under California's anti-SLAPP statute .......... 26

a. Ms. Kohler's FB Post clearly relates to a matter of public concern .......... 28

b. Mr. Ratner cannot demonstrate a probability of prevailing on his claim .......... 29

IV. CONCLUSION .......... 30

# TABLE OF AUTHORITIES

## Federal Cases

*Ancheta v. Watada*,
135 F. Supp. 2d 1114 (D. Haw. 2001)........................................................ 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................... 11

*Ayyadurai v. Floor64, Inc.*,
2017 WL 3896668 (D. Mass. Sept. 6, 2017)................................................ 24

*Batzel v. Smith*,
333, F.3d 1018, 1025 (9th Cir. 2003)........................................................... 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................ 4, 10, 11

*Besen v. Parents & Friends of Ex-Gays, Inc.*,
2012 WL 1440183 (E.D. Va. Apr. 25, 2012)................................................ 16

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015) .................................................................. 11, 13, 15

*Biro v. Conde Nast*,
963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013), ........................................... 13, 15, 19

*Carrasco v. HSBC Bank USA Nat'l Ass'n*,
2011 WL 6012944 (N.D. Cal. Dec. 1, 2011) ................................................ 17

*Conley v. Gibson*,
355 U.S. 41 (1957)........................................................................................ 11

*Containment Techs. Grp., Inc. v. Am. Soc. of Health Sys. Pharmacists*,
2009 WL 838549 (S.D. Ind. Mar. 26, 2009) ................................................ 24

*DeRoburt v. Gannett Co.*,
83 F.R.D. 574 (D. Haw. 1979) ..................................................................... 6, 25

*Earley v. Gatehouse Media Penn. Holdings, Inc.*,
2013 WL 5466149 (M.D. Pa. Sept. 30, 2013) .......... 12

*Heineke v. Santa Clara Univ.*,
2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) .......... 28

*In re WPMK Corp.*,
59 B.R. 991 (D. Haw. 1986) .......... 6

*Intercon Sols., Inc. v. Basel Action Network*,
969 F. Supp. 2d 1026 (N.D. Ill. 2013) .......... 15, 17

*Isaac v. Daniels*,
2017 WL 2962890 (D. Haw. June 23, 2017) .......... 17

*Kukui Gardens Corp. v. Holco Capital Grp., Inc.*,
2010 WL 145284 (D. Haw. Jan. 12, 2010) .......... 23

*Lemen v. Allstate Ins. Co.*,
938 F. Supp. 640 (D. Haw. 1995) .......... 22

*Madison v. Frazier*,
539 F.3d 646 (7th Cir. 2008) .......... 17

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254 (9th Cir. 2013) .......... 1, 27, 30

*Manzari v. Associated Newspapers Ltd.*,
830 F.3d 881 (9th Cir. 2016) .......... 12

*Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*,
674 F.3d 369 (4th Cir. 2012) .......... 11, 14, 15, 19

*McKee v. Cosby*,
236 F. Supp. 3d 427, 452 (D. Mass. 2017) .......... 29

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016) .......... *Passim*

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)....................................................................5, 12, 16

*Pan Am Sys., Inc. v. Hardenbergh*,
871 F. Supp. 2d 6 (D. Me. 2012)..........................................................................17

*Parisi v. Sinclair*,
845 F. Supp. 2d 215 (D.D.C. 2012).....................................................................16

*Patton v. Cox*,
276 F.3d 493 (9th Cir. 2002)...............................................................................21

*Pippen v. NBCUniversal Media, LLC.*,
734 F.3d 610 (7th Cir. 2013)..........................................................11, 13, 15, 19

*Ranbaxy Labs., Inc. v. First Databank, Inc.*,
2014 WL 982742 (M.D. Fla. Mar. 12, 2014).......................................................24

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
2017 WL 4618676 (N.D. Cal. Oct. 16, 2017).........................................................6

*Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc.*,
2009 WL 10676972 (D. Haw. June 12, 2009).................................................6, 11

*Roe v. Doe*,
2009 WL 1883752 (N.D. Cal. June 30, 2009)......................................................14

*Schatz v. Republican State Leadership Committee*,
669 F.3d 50 (1st Cir. 2012).......................................................................11, 14, 19

*Thomas v. L.A. Times Commc'ns, LLC*,
189 F. Supp. 2d 1005 (C.D. Cal. 2002)...............................................................12

*Tobinick v. Novella*,
108 F. Supp. 3d 1299 (S.D. Fla. 2015)...................................................22, 23, 24

*Troxel v. Deutsche Bank Nat. Tr. Co.*,
2015 WL 4603099 (D. Haw. July 30, 2015)...........................................................8

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) .............................................................. 20, 21

*Wynn v. Chanos*,
75 F. Supp. 3d 1228 (N.D. Cal. 2014)................................................... 14

**State Cases**

*Briggs v. Eden Council for Hope & Opportunity*,
969 P.2d 564 (Cal. 1999)................................................................. 28

*Cho v. Chang*,
219 Cal. App. 4th 521 (2013) ........................................................... 27

*Contemporary Servs. Corp. v. Staff Pro Inc.*,
61 Cal. Rptr. 3d 434 (Ct. App. 2007) ................................................ 27

*Dickinson v. Cosby*,
225 Cal. Rptr. 3d 430 (Ct. App. 2017) .............................................. 28

*DuPont Merck Pharm. Co. v. Superior Court*,
92 Cal. Rptr. 2d 755 (Ct. App. 2000) ................................................ 29

*Equilon Enterprises v. Consumer Cause, Inc.*,
52 P.3d 685 (Cal. 2002)................................................................... 28

*Mikelson v. United Servs. Auto. Ass'n*,
107 Hawaii 192, 111 P.3d 601 (2005)................................................ 22

*Rodriguez v. Nishiki*,
65 Haw. 430, 653 P.2d 1145 (1982)................................................ 6, 12

**State Statutes**

Cal. Civ. Proc. Code § 425.16 (West 2015) .........................................*Passim*
Cal. Civ. Proc. Code § 425.16(b)(1) ................................................... 27
Cal. Civ. Proc. Code § 425.16 (b)(2) .................................................. 27
Cal. Civ. Proc. Code § 425.16(e) ................................................... 20, 27
D.C. Code Ann. § 16-5502 (West) ...................................................... 20
Haw. Rev. Stat. § 634F-1 ................................................................... 20

Haw. Rev. Stat. § 634F–2(1) (2012) .................................................. 22
La. Code Civ. Proc. Ann. art. 971 .................................................. 20
Or. Rev. Stat. Ann. § 31.150 (West) .................................................. 20

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .................................................. *Passim*
Fed. R. Evid. 201 .................................................. 1

**Other Authorities**

Restatement (Second) of Conflict of Laws § 150 (1971) .................................................. 25

MEMORANDUM IN SUPPORT OF MOTION

Defendant Melanie Kohler ("Kohler") submits this memorandum of law in support of her motion to dismiss and strike the complaint filed by Plaintiff Brett Ratner ("Ratner").

## I. PRELIMINARY STATEMENT

Mr. Ratner is a powerful, well-known Hollywood director and producer. He has filed this defamation lawsuit with a single purpose: to silence and intimidate Ms. Kohler—and other women like her—from coming forward with stories of grave sexual mistreatment at his hands. This case thus raises significant First Amendment concerns. To overcome them, and to comply with basic requirements of notice pleading, Mr. Ratner must allege his claim with particularity. But instead, he has filed a three-page complaint that exemplifies conclusory pleading: rather than include facts to support his claim and make it plausible, he alleges as "facts" the underlying legal elements of defamation liability. It is black letter law that a complaint like the one filed here flunks Rule 12(b)(6).

Although Mr. Ratner decided not to include any factual allegations in his Complaint, this case cannot be understood in isolation. *See* Fed. R. Evid. 201 (authorizing judicial notice of relevant, uncontestable adjudicative facts); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2, 266–67 (9th Cir. 2013). More than a dozen other women have publicly accused Mr. Ratner of sexual assault, sexual

harassment, or some combination thereof. Some of these claims surfaced years ago.[1] But many of them were first publicly reported by the *Los Angeles Times* on November 1, 2017.[2] As a wave of discourse about sexual assault and harassment swept across the nation, the *LA Times* published the stories of six women—some of them famous actors and none of them Ms. Kohler—who stated that Mr. Ratner had engaged in sexual misconduct. Each of these women alleged some form of sexual harassment or assault by Mr. Ratner; for example, one of them revealed that Mr. Ratner had forced her to perform oral sex on him. Almost immediately,

---

[1] *See, e.g.*, Danielle Berrin, *The Morning After: What I Learned From Brett Ratner Hitting on Me*, THE JEWISH JOURNAL, Nov. 9, 2011, *available at* http://jewishjournal.com/newspulse/97928/ (reporter's claim that she had to "repeatedly remov[e] [Ratner's] hands from between [her] legs"); *Ryan Kavanaugh Attacks Brett Ratner in Deleted Twitter Tirade,* HOLLYWOOD REPORTER (Aug. 9, 2016, 10:29 PM), https://www.hollywoodreporter.com/news/ryan-kavanaugh-attacks-brett-ratner-921290 (reporting that an individual accused Ratner of being the "epitome" of "casting couch"); Vince Mancini, *Olivia Munn Says Brett Ratner Masturbated To Her While Eating Shrimp*, UPROXX, (Nov. 4, 2011), http://uproxx.com/filmdrunk/olivia-munn-says-brett-ratner-masturbated-to-her-while-eating-shrimp/.

[2] *See* Amy Kaufman & Daniel Miller, *Six Women Accuse Filmmaker Brett Ratner of Sexual Harassment or Misconduct*, LA TIMES, Nov. 1, 2017, http://www.latimes.com/business/hollywood/la-fi-ct-brett-ratner-allegations-20171101-htmlstory.html. On November 19, in a follow-up story, four other accounts of assault and harassment were published by the *Los Angeles Times*, including one claiming Ratner watched as Russell Simmons raped a woman. *See* Amy Kaufman, Daniel Miller & Victoria Kim, *Russell Simmons and Brett Ratner Face New Allegations of Sexual Misconduc*t, LA TIMES, Nov. 19, 2017, http://beta.latimes.com/business/hollywood/la-fi-brett-ratner-russell-simmons-20171119-htmlstory.html; *see also* Rachel Abrams, *Brett Ratner, Prominent Producer, Accused of Sexual Misconduct*, N.Y. Times, Nov. 1, 2017, https://www.nytimes.com/2017/11/01/business/brett-ratner-sexual-harassment.html?_r=0.

reports surfaced that Warner Brothers planned to sever ties with Mr. Ratner, Playboy Enterprises had halted its plans to work with him on a Hugh Hefner Biopic, and his talent agency was reviewing whether to continue working with him.[3]

A few hours after these reports emerged—and in an apparent effort to intimidate other women from speaking out—Mr. Ratner filed this case against Ms. Kohler. The Complaint alleges that she, and she alone, defamed him in a Facebook post that had been published for less than two hours in mid-October 2017 (the "FB Post").[4] That post accused Mr. Ratner of rape and described the encounter in considerable detail. According to Mr. Ratner, that FB Post renders Ms. Kohler responsible for the damage that his personal and professional reputation has sustained. To the best of our knowledge, Mr. Ratner has not sued any of his other accusers, many of whom are far more wealthy and famous than Ms. Kohler, and whose accounts were published in national press.

---

[3] *See* Ryan Faughnder & Daniel Miller, *Warner Bros. Cuts Ties with Brett Ratner After Sexual Misconduct Allegations*, LA TIMES, Nov. 1, 2017, http://www.latimes.com/business/hollywood/la-fi-ct-brett-ratner-warner-bros-20171101-story.html.

[4] *See* David Streitfeld, *As Sex Accusations Flood Social Media, Lawyers Gear Up for Suits*, N.Y. TIMES, Nov. 3, 2017, https://www.nytimes.com/2017/11/03/technology/sex-accusations-social-media-lawsuits.html?_r=1 ("Social media has overflowed with sexual misconduct allegations during the last few weeks. The 450-word post that Melanie put on Facebook probably had the shortest life — a few hours.").

Mr. Ratner's Complaint purports to state a claim in three conclusory sentences. Indeed, his "factual allegations" total only 190 words. Without explanation, the Complaint quotes only a small fraction of Ms. Kohler's FB Post. It then alleges—with no further detail—that this statement was "false, fabricated, and fictional," and that Ms. Kohler published it with "knowledge of its falsity, maliciously, and with the intent to harm Plaintiff's reputation and standing." That's it. The Complaint does not address the rest of Ms. Kohler's post; it does not explain why the selected statement is false or what relationship (if any) Mr. Ratner had with Ms. Kohler; and it alleges zero facts suggesting why Ms. Kohler would have been motivated to lie about Mr. Ratner raping her. Most significantly, the Complaint does not describe as false the portions of Ms. Kohler's post in which she explains her motives for publishing it: "I can't be an advocate for women speaking out if I don't speak out too . . . Now at least I can look myself in the mirror and not feel like part of me is a coward or a hypocrite. Exhibit "A."

As the Supreme Court has made clear, such threadbare, conclusory allegations are patently insufficient as a matter of law. In *Iqbal* and *Twombly*, the Court held that all federal plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, a plaintiff may not simply recite the elements of a legal claim without pleading any factual allegations to make his claim plausible. This is not a

controversial requirement, nor is it an onerous one. But it establishes some ground rules for pleading cases in federal court that this Complaint comes nowhere close to satisfying.

In a defamation case like this one—involving speech about a public figure on a matter of public importance—the *Iqbal*/*Twombly* pleading standard actually does double duty. Even as it filters out conclusory pleadings under Rule 12(b)(6), it also safeguards core First Amendment principles. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (requiring proof of "actual malice" when public figures file defamation claims). It does so by requiring public figures to do more than merely allege, on their own say so, that unflattering statements were false. Instead, they must offer particularized factual allegations to make their claims plausible. Without this rule, public figures could chill valuable speech by filing barebones, boilerplate defamation complaints, thus saddling their accusers with the substantial costs of defending a lawsuit and undertaking discovery. As this Court has recognized: "Claims for defamation/false light invasion of privacy must be specifically pled . . . The general rule of liberally construing a complaint when considering 12(b)(6) motions is inapplicable to certain traditionally disfavored causes of action, including defamation." *Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc.*, CIVIL No. 09-00024 HG-LEK, 2009 WL 10676972, at *9 (D. Haw. June 12, 2009) (citation omitted).

The Complaint must also be dismissed for a distinct and equally clear reason: failure to satisfy the applicable provisions of California's anti-SLAPP statute.[5] Under Hawaii's choice of law principles, California law applies to the anti-SLAPP analysis. Not only is Mr. Ratner from California, but all of his alleged injury occurred there, and all of the events underlying Ms. Kohler's statement took place in Los Angeles. Further, California has a strong interest in encouraging speech about a sexual assault that took place within its borders by one of its residents. Applying California's anti-SLAPP law, the Complaint must be struck because Mr. Ratner cannot meet his burden of showing that he is likely to succeed on the merits. *See* Cal. Civ. Proc. Code § 425.16 (West 2015).

---

[5] Applying California law for purposes of anti-SLAPP does not necessarily require the Court to apply California law for purposes of the defamation claim. *DeRoburt v. Gannett Co.*, 83 F.R.D. 574, 581 n. 29 (D. Haw. 1979). ("Traditional choice of law rules have . . . been used to apply different rules of law to different issues arising in the same case."); *see also In re WPMK Corp.*, 59 B.R. 991, 995 (D. Haw. 1986). Nevertheless, the substantive standard for defamation against public figures is the same in California as it is in Hawaii. *Compare Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17-CV-02824-JST, 2017 WL 4618676, at *7 (N.D. Cal. Oct. 16, 2017), *with Rodriguez v. Nishiki*, 65 Haw. 430, 440, 653 P.2d 1145, 1151 (1982).

## II. STATEMENT OF FACTS

In his Complaint, Mr. Ratner describes himself as an "accomplished and well-known film director who resides in Los Angeles." Compl. ¶ 4. Ms. Kohler is currently a resident of Hawaii. Compl. ¶ 3.

In mid-October 2017, as an unprecedented number of women and men came forward to share their stories of sexual abuse, Ms. Kohler published a post on Facebook in which she stated that Mr. Ratner had raped her years earlier, when she lived in Los Angeles. On November 1, 2017, the *Los Angeles Times* printed a story detailing six *different* women's accounts of sexual mistreatment by Mr. Ratner. That story was republished in the *New York Times*, *USA Today*, the *Guardian*, and many other papers. Hours after it first appeared, Mr. Ratner filed the instant Complaint.

Mr. Ratner's Complaint contains the following three paragraphs of relevant allegations:

> (7) Commencing on or about October 20, 2017, Defendant recklessly and/or intentionally posted a statement on her Facebook page claiming that "Brett Ratner raped [her];" Ratner "was a rapist on at least one night in Hollywood about 12 years ago;" and Ratner "preyed on me as a drunk girl [and] forced himself upon me.
>
> (8) Plaintiff contends that the Defendant's aforementioned statement is entirely false, fabricated, and fictional.
>
> (9) Plaintiff contends that the Defendant's aforementioned statement was published by the Defendant with knowledge of its falsity, maliciously, and with the intent to harm Plaintiff's reputation and standing.

Compl. ¶¶ 7–9.

The Complaint contains no other factual allegations suggesting that Ms. Kohler's statement is false. Likewise, the Complaint does not contain any allegations explaining why Ms. Kohler, who moved to Hawaii eight years ago (and lives in Hawaii with her husband and young son), was motivated to lie about an encounter with Mr. Ratner. The Complaint offers no particularized allegations at all about Ms. Kohler, or about any relationship she may ever have had with Mr. Ratner. For example, there are no allegations that Ms. Kohler ever worked for Mr. Ratner, knew Mr. Ratner, threatened to sue Mr. Ratner, lied in order to gain anything from Mr. Ratner, or had any particular reason to injure Mr. Ratner. Certainly, there is not (and could not be) any plausible explanation for why, living with her family in Hawaii, Ms. Kohler would have anything whatsoever to gain from lying about a sexual assault by Mr. Ratner that took place in Los Angeles many years ago.

It is telling that the Complaint excludes most of Ms. Kohler's FB Post, which provides a compelling, comprehensive, and highly detailed account of her experience with Mr. Ratner, as well as an explanation for why she decided to share her story. The FB Post is indisputably incorporated into the Complaint by reference and may be considered at this stage. *Troxel v. Deutsche Bank Nat. Tr. Co.*, No. CIV. 14-00342 LEK-RLP, 2015 WL 4603099, at *2 (D. Haw. July 30,

2015) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (internal citation omitted)). Here is the full text:

> My hands are shaking even as I try to write this. It's not something I've ever told anyone in my entire life.
>
> Not even my closest friends at the time.
>
> Brett Ratner raped me. He is a famous director and producer in Hollywood.
>
> If there is a chance of changing the [H]ollywood culture, the American culture, it has to happen now while people are listening.
>
> I tell this story in hopes that if he's done it to others that they might have the confidence to come forward. And if he hasn't, that maybe he can be accountable for the way he's treated the nobodies of the world or at least the way he's treated me.
>
> Even if he treats all the somebodies of the world with respect and decency, he is not a public monster like Harvey and I don't think anyone has much bad to say about him professionally, that doesn't mean he can do this in the dark shadows of the night when he thinks no one is looking. He was a predator and a rapist on at least one night in Hollywood about 12 years ago.
>
> It happened when I worked at Endeavor Talent Agency in [H]ollywood. It was 2004 or 2005. I won't go into the details here to spare the people who don't want to hear them but I'm willing to share my story with anyone who needs to hear it.
>
> Long story short, he preyed on me as a drunk girl who as alone at a club at the end of the night, he took me back to Robert Evans house, he forced himself upon me after I said no and no and no again, and then left me there. He just got up, didn't say a word, got in his car and left and I laid there humiliated and broken on the floor. The rest of

> the night is fuzzy, I must have stumbled out of the house and called a cab and I went home and erased it from my mind.
>
> I'm embarrassed, humiliated, ashamed, and I wish I could go back to forgetting it ever happened. But if I do that, if we all do that, then it keeps happening. We have to come forward. I can't be an advocate for women speaking out if I don't speak out too.
>
> Brett Ratner raped me. I'm saying his name, I'm saying it publicly. Now at least I can look myself in the mirror and not feel like part of me is a coward or a hypocrite. I'm standing up and saying this happened to me and it was not okay
>
> Come what may, it is the right thing to do.

Exhibit "A."

## III. ARGUMENT

Ms. Kohler's motion to dismiss should be granted for two reasons. First, Mr. Ratner has failed to meet basic pleading standards for a defamation claim. And second, his claim is a strategic lawsuit against public participation and is thus barred by California's anti-SLAPP law.

### A. The Complaint Must Be Dismissed Pursuant to Rule 12(b)(6)

A public figure like Mr. Ratner cannot lawfully chill speech about his conduct by filing a complaint that merely recites the elements of his cause of action. Yet that is precisely what Mr. Ratner has sought to achieve here. Stripped of its conclusory allegations, the Complaint is essentially a blank piece of paper. It lacks any factual allegation from which this Court can infer that Ms. Kohler's FB Post was false or was published with actual malice. The Complaint must therefore

be dismissed pursuant to Rule 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**1. The legal standard for adequately pleading a defamation claim**

Prior to *Iqbal* and *Twombly*, plaintiffs were entitled to proceed past a motion to dismiss so long as it was not utterly "beyond doubt" that they could substantiate their claims for relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). But that is no longer the law. The Supreme Court has since made it clear that a plaintiff must plead "enough facts to state a claim to relief that is *plausible* on its face." *Twombly*, 550 U.S. at 570 (emphasis added). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the legal elements of a claim provide the framework for a complaint, "they *must* be supported by factual allegations." *Id.* at 679 (emphasis added).

Like any other complaint filed in federal court, a defamation complaint must satisfy these requirements. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *Biro v. Conde Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *Pippen v. NBCUniversal Media, LLC.*, 734 F.3d 610, 614 (7th Cir. 2013); *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012); *Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012); *Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc.*, CIVIL No. 09-

00024 HG-LEK, 2009 WL 10676972, at *9 (D. Haw. June 12, 2009) (holding that "claims for defamation . . . must be specifically pled").

Defamation cases, however, also implicate distinct First Amendment concerns. When a public figure like Mr. Ratner alleges a defamation claim, the Constitution holds him to a higher standard.[6] *See New York Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964). Specifically, he must plead—and later prove—that the defendant acted with "actual malice." *Id.* The Hawaii Supreme Court has held that this means that a plaintiff must plead and prove that a defendant engaged in a "deliberate falsification" of facts or acted with "reckless disregard" of the truth. *Rodriguez v. Nishiki*, 65 Haw. 430, 436, 653 P.2d 1145, 1149 (1982) (internal quotation marks and citation omitted). This standard applies to both media defendants like the *Los Angeles Times* and to "nonmedia" defendants like Ms. Kohler. *Id.* at 436-37.

As many federal courts have held, the interaction of this "actual malice" requirement with the strictures of *Iqbal* and *Twombly* requires defamation plaintiffs to surmount an unusually "onerous" burden at the pleading stage. *Earley v.*

[6] Here, Mr. Ratner's own allegations conclusively establish his status as a public figure. As alleged in the Complaint, Mr. Ratner "is an accomplished and well known film director and producer." Compl. ¶ 4. This statement alone is sufficient for the Court to find that Plaintiff is a public figure. *See Thomas v. L.A. Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1011 (C.D. Cal. 2002), *aff'd*, 45 F. App'x 801 (9th Cir. 2002); *see also Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016).

*Gatehouse Media Penn. Holdings, Inc.*, No. 12-Civ-1886, 2013 WL 5466149, at *6 (M.D. Pa. Sept. 30, 2013). It is no longer adequate to plead that the defendant made the allegedly libelous statement with knowledge of its falsity, rather, facts must be pleaded to nudge the claim across the line from conceivable to plausible.

Indeed, the plausibility requirement of *Iqbal* and *Twombly* applies not only to pleading events that are alleged to have occurred in the physical world, but to allegations concerning a party's state of mind as well. *See Pippen v. NBCUniversal Media, LLC.*, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible."). Thus, in the context of alleged defamation of a public figure, a plaintiff is required to plausibly allege actual malice on the part of the defendant. One court has explained this rule as follows:

> *Iqbal* itself squarely holds that, where a particular state of mind is a necessary element of a claim, defendant's pleading of that state of mind must be plausible and supported by factual allegations. Moreover, given the difficulty of proving actual malice, as well as the fact that actual malice must be proven by clear and convincing evidence in order for a plaintiff to succeed, it stands to reason that Rule 12(b)(6) should play a particularly important role in testing the plausibility of a plaintiff's defamation claim.

*Biro v. Conde Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) (internal citations omitted); *accord Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (applying *Iqbal* and holding that "a defamation

suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice").

Simply put, a defamation plaintiff like Mr. Ratner cannot satisfy the "demanding burden for pleading actual malice" by merely reciting the elements of the claim. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) (internal quotation marks and citation omitted); *see also Roe v. Doe*, No. 09-Civ-682, 2009 WL 1883752, at *14 (N.D. Cal. June 30, 2009) (dismissing a complaint that contained only a "conclusory boilerplate allegation that [defendants] acted 'falsely, maliciously, fraudulently and oppressively'" as "insufficient to state a cause of action in a case where actual malice is required"). Bare allegations that a defendant's statements "were known by [defendant] to be false at the time they were made," and "were malicious or were made with reckless disregard as to their veracity" are "precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Mayfield*, 674 F.3d at 377-78; *accord Schatz*, 669 F.3d at 56 (use of "actual-malice buzzwords," including allegations that the defendant knew that her statements were false, are "merely legal conclusions, which must be backed by well-pled facts").

Based on these principles, every Court of Appeals, including the First, Second, Fourth, Seventh, and Eleventh, to have considered the issue post-*Iqbal*/*Twombly* has agreed that a public figure defamation plaintiff cannot "make

out a plausible malice claim" unless he has laid out "enough facts from which malice might reasonably be inferred." *Schatz*, 669 F.3d at 58; *see also Michel*, 816 F.3d at 707 (dismissing complaint for failure to satisfy this requirement); *Biro v. Conde Nast*, 807 F.3d 541, 541 (2d Cir. 2015) (same); *Pippen*, 734 F.3d at 616 (same); *Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 369 (4th Cir. 2012) (same). Courts have allowed such claims to proceed only where the plaintiff alleged, with particularity, a plausible motivation for the defendant's malicious act. *See, e.g.*, *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1057 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015).

Although based in pleading rules, this doctrine is heavily influenced by First Amendment considerations. *See Ancheta v. Watada*, 135 F. Supp. 2d 1114, 1122 (D. Haw. 2001). As one court has explained, *Iqbal* has a "particular value" in defamation cases, since Rule 12(b)(6) "not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro*, 963 F. Supp. 2d at 279. In a similar vein, the Eleventh Circuit has observed:

> [A]pplication of the plausibility pleading standard makes particular sense when examining public figure defamation suits. In these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation. Indeed, the actual malice standard was designed

> to allow publishers the "breathing space" needed to ensure robust reporting on public figures and events.

*Michel*, 816 F.3d at 702 (citing *Sullivan*, 376 U.S. at 271-72). These principles apply with full force to this litigation and compel the conclusion that Mr. Ratner has failed to state a claim.

**2. Mr. Ratner's Complaint fails to plausibly allege actual malice**

As explained above, courts require particularized factual allegations that support a plausible inference of actual malice. Here is Mr. Ratner's entire allegation of malice from the Complaint:

> Plaintiff contends that the Defendant's aforementioned statement was published by the Defendant with knowledge of its falsity, maliciously, and with the intent to harm Plaintiff's reputation and standing.

Compl. ¶ 9. In short, Mr. Ratner has done nothing more than allege a legal conclusion. Stripped of its conclusory language, there are literally *no* factual allegations in the Complaint supporting any plausible inference that Ms. Kohler's statement was made with actual malice.

Under *Iqbal* and *Twombly*, that alone requires dismissal. Using legal "buzzwords" to restate the applicable legal standard does not satisfy Rule 12(b)(6). *See, e.g.*, *Besen v. Parents & Friends of Ex-Gays, Inc.*, No. 12-Civ-204, 2012 WL 1440183, at *5-7 (E.D. Va. Apr. 25, 2012) (dismissing defamation claim where plaintiff provided "bald contentions" that failed to explain how the statements were false and did not allege facts demonstrating malice); *Parisi v. Sinclair*, 845 F.

Supp. 2d 215, 218-19 (D.D.C. 2012) (dismissing libel and invasion of privacy claims where plaintiffs made only "conclusory" allegations of actual malice); *Carrasco v. HSBC Bank USA Nat'l Ass'n*, No. 11-Civ-2711, 2011 WL 6012944, at *4 (N.D. Cal. Dec. 1, 2011) (dismissing slander of title claim where plaintiff made only boilerplate allegations of actual malice).

Not surprisingly, the Complaint here stands in stark contrast to the few post-*Iqbal*/*Twombly* cases holding that public figure defamation complaints adequately alleged actual malice. In such cases, plaintiffs have specifically alleged what was false about the statement, and have alleged a plausible account of the defendants' motive for lying. In *Intercon Solutions., Inc.*, for example, the court denied a motion to dismiss where the plaintiff had alleged that the "defendant's actions were motivated by its desire to 'create a false reputation as a crusader and ethical leader in the e-recycling industry' and 'to increase enrollment in [its] "e-Stewards" certification program and increase its revenues.'" 969 F. Supp. 2d at 1057. The Complaint here, by contrast, contains no allegations elaborating on Mr. Ratner's conclusory assertions of falsity and actual malice.[7]

---

[7] These core principles of pleading defamation are not somehow rendered inapplicable by virtue of the fact that in this case, Ms. Kohler's FB Post accuses Mr. Ratner of rape. In other words, the doctrine of defamation per se, which applies to accusations of rape, *see*, *e.g.*, *Isaac v. Daniels*, CIVIL No. 16-00507 DKW-RLP, 2017 WL 2962890, at *6 (D. Haw. June 23, 2017), does not alter the pleading requirements for actual malice. *See, e.g.*, *Madison v. Frazier*, 539 F.3d

Absent any factual allegations by Mr. Ratner suggesting any plausible motivation on Ms. Kohler's part to lie, the Court cannot draw any inferences regarding Ms. Kohler's state of mind when she wrote the FB Post in 2017—years after Mr. Ratner raped her. Indeed, it is telling that Mr. Ratner excluded most of her FB Post from the Complaint, including the section in which Ms. Kohler explained why she felt moved to share her story. Rather than allege with particularity that any part of this explanation is false, Mr. Ratner simply deleted it from his pleading.

This decision by Mr. Ratner to exclude the rest of Ms. Kohler's FB Post further militates in favor of dismissing the Complaint. Does Mr. Ratner believe that Ms. Kohler's statements were false and that they were published with actual malice? If so, why? Does Mr. Ratner admit that he had sex with Ms. Kohler, but deny that it was nonconsensual? Does he admit that Ms. Kohler was drunk and that he had sex with her, but nonetheless deny that it was rape? Does he admit that Ms. Kohler repeatedly said "no," as she stated in her FB Post, but still somehow claim that he did not rape her? Or perhaps he denies that he has ever met Ms. Kohler? Mr. Ratner's peculiar decision to lift a few lines from her FB Post and to ignore the rest undermines any inference that his conclusory allegations of actual malice are sufficient to compel burdensome, expensive discovery in this case.

646, 657-59 (7th Cir. 2008); *Pan Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 17 (D. Me. 2012).

Indeed, not only did Mr. Ratner fail to allege any facts showing actual malice, but he also deliberately concealed highly relevant facts *within* Ms. Kohler's FB Post showing that Ms. Kohler acted with honorable, non-malicious motives. As she explains in her FB Post, "I can't be an advocate for women speaking out if I don't speak out too . . . Now at least I can look myself in the mirror and not feel like part of me in a coward or a hypocrite." Exhibit "A." By failing to include those statements in the Complaint, and by failing to allege that Ms. Kohler's contemporaneous explanation for publishing her post is somehow false or malicious, Mr. Ratner has all but conceded that he has no basis for alleging actual malice here.

For all these reasons, the Complaint clearly does not satisfy Rule 12(b)(6) and should be dismissed. *See Biro*, 963 F. Supp. 2d at 277; *see also Michel*, 816 F.3d at 707; *Pippen*, 734 F.3d at 616; *Schatz*, 669 F.3d at 56-8; *Mayfield*, 674 F.3d at 378.

**B. Mr. Ratner's Complaint Should Be Dismissed Under California's Anti-SLAPP Statute**

This Court should also strike the Complaint because it is a Strategic Lawsuit Against Public Participation ("SLAPP") pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 *et seq.*

The hallmark of a SLAPP lawsuit is that it is "brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of

litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation." *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970–71 (9th Cir. 1999). Recognizing that plaintiffs may file SLAPP lawsuits in order to improperly halt speech on important matters of public discourse, California and Hawaii, along with several other states, have adopted anti-SLAPP statutes to provide immunity from "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16. Generally, anti-SLAPP statutes impose a duty on a plaintiff who brings a lawsuit relating to the exercise of defendants' First Amendment rights of free speech to make a preliminary showing of a likelihood of success before the case can proceed. *See, e.g.*, La. Code Civ. Proc. Ann. art. 971; D.C. Code Ann. § 16-5502 (West); Or. Rev. Stat. Ann. § 31.150 (West).

California's anti-SLAPP statute is broader than Hawaii's, and applies both to speech made in the context of a public hearing or proceeding (as Hawaii's does) and to speech made in a non-testimonial context. *Compare* Haw. Rev. Stat. § 634F-1, *with* Cal. Civ. Proc. Code § 425.16(e). By its own terms, California's anti-SLAPP law "shall be construed broadly." Cal. Civ. Proc. Code § 425.16. In fact, "California's statute, enacted in 1992, remains the strongest—and most frequently litigated—anti-SLAPP statute in the nation for the protection of speech and

petitioning activities." Thomas R. Burke, Davis Wright Tremaine, *Last Year's Key California Anti-SLAPP Decisions*, Feb. 3, 2017, *available at* https://www.law360 .com/ articles/888023/last-year-s-key-california-anti-slapp-decisions.

**1. The Court should apply California's anti-SLAPP statute**

The Ninth Circuit has recognized that because anti-SLAPP statutes confer a substantive immunity, they must be applied in federal court. *See U.S. ex rel. Newsham*, 190 F.3d at 973 (holding that the provisions of California's anti-SLAPP statute concerning a special motion to strike and availability of fees and costs could apply in federal court); *see also Batzel v. Smith*, 333, F.3d 1018, 1025 (9th Cir. 2003), *superseded by statute on other grounds as stated by Breazale v. Victim Servs., Inc.*, Nos. 15-16549, 16-16495, 2017 WL 6601779 (9th Cir. 2017) ("[A] defendant's rights under the anti-SLAPP statute are in the nature of immunity" because "California lawmakers wanted to protect speakers from the trial itself rather than merely from liability.").

Because anti-SLAPP statutes confer a substantive right, this Court, sitting in diversity, must undertake a choice of law analysis to determine which state's anti-SLAPP law applies. This involves a two-part analysis. First, the Court must determine whether there is a conflict between the potentially applicable laws of two different states. Then, if there is such a conflict, the Court must apply "the

forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).

Here, there is clearly a conflict between California's and Hawaii's anti-SLAPP statutes. While Hawaii's anti-SLAPP law is limited to public testimony, Haw. Rev. Stat. § 634F–2(1) (2012), California's anti-SLAPP statute applies broadly to any act "in furtherance of the person's right of petition or free speech . . . in connection with a public issue," including this Complaint. Cal. Civ. Proc. Code § 425.16. *See Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1303 (S.D. Fla. 2015) ("A genuine conflict of law exists, as Florida has no equivalent to California's anti-SLAPP statute."). Thus, the Court must apply Hawaii conflict of law rules to determine whether California's anti-SLAPP statute applies.

"Hawaii resolves its conflict of laws issues by deciding which State has the strongest interest in seeing its law applied to a particular case." *Lemen v. Allstate Ins. Co.*, 938 F. Supp. 640, 643 (D. Haw. 1995); *see also Mikelson v. United Servs. Auto. Ass'n*, 107 Hawaii 192, 198, 111 P.3d 601, 607 (2005) ("This court has 'moved away from the traditional and rigid conflict-of-laws rules in favor of the modern trend towards a more flexible approach looking to the state with the most significant relationship to the parties and subject matter.'" (citation omitted)). "[T]he interests of the states and applicable public policy reasons should determine whether Hawaii law or another state's law should apply." *Mikelson*, 107 Hawaii at

198, 111 P.3d at 607. In making this determination, Hawaii courts look to factors such as "(1) where relevant events occurred, (2) the residence of the parties, and (3) whether any of the parties had any particular ties to one jurisdiction or the other." *Kukui Gardens Corp. v. Holco Capital Grp., Inc.*, No. CIV.08-00049 ACK-KSC, 2010 WL 145284, at *5 (D. Haw. Jan. 12, 2010). In this case, each of these three factors weighs heavily in favor of applying California law here. First, the relevant event—the rape described in Ms. Kohler's FB Post—occurred in California, and the alleged harm to Mr. Ratner occurred in California. *See Tobinick*, 108 F. Supp. 3d at 1304 (holding that California's anti-SLAAP law applied because "generally, the law of the forum where the injury occurred determines the substantive issues unless another state has a more compelling interest"). Second, Mr. Ratner is a resident of California. And although Ms. Kohler is currently a resident of Hawaii, she was a resident of California at the time of the rape described in the FB Post. *See* Declaration of Melanie Kohler at ¶ 4; Exhibit "A." Third, Mr. Ratner has strong and significant ties to California. Mr. Ratner is a high-profile and important director and producer in Hollywood, including having a Star on the Hollywood Walk of Fame.[8]

---

[8] *See* Nick Clement, *Walk of Fame Honoree Brett Ratner Builds Hollywood Production Powerhouse*, Variety, Jan. 19, 2017, http://variety.com/2017/film/spotlight/brett-ratner-walk-of-fame-james-packer-ratpac-warner-bros-kevin-tsujihara-1201963846/.

To be sure, the *only* connection between this case and Hawaii is that Ms. Kohler now lives in Hawaii and wrote her FB Post from Hawaii. However, when it comes to publication of information on the Internet such as Kohler's FB Post, courts deciding whether to apply an anti-SLAPP statute commonly recognize that a state's "interest in limiting frivolous litigation filed by its residents outweighs any interest [the forum state] has in the dispute." *Tobinick*, 108 F. Supp. 3d at 1304 (applying California's anti-SLAPP statute to a case where plaintiff was from California and defendant was from Connecticut, finding that "[a]ny relationship that exists between the parties is not centered in a particular state, given that the statements at issue were made on the internet"); *see Ranbaxy Labs., Inc. v. First Databank, Inc.*, No. 3:13-CV-859-J-32MCR, 2014 WL 982742, at *6 (M.D. Fla. Mar. 12, 2014) ("[T]he applicable substantive law for purposes of the anti-SLAPP statute is the state of Ranbaxy's principal place of business, where the loss of sales and market share was most felt."); *Containment Techs. Grp., Inc. v. Am. Soc. of Health Sys. Pharmacists*, No. 1:07-CV-0997DFHTAB, 2009 WL 838549, at *8 (S.D. Ind. Mar. 26, 2009) ("Since the alleged injury here would have been felt most severely in Indiana, Indiana law governs the dispute."); *Ayyadurai v. Floor64, Inc.*, No. CV 17-10011-FDS, 2017 WL 3896668, at *4 (D. Mass. Sept. 6, 2017) ("When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state

where the person was domiciled at the time, if the matter complained of was published in that state. Thus, there is effectively a presumption that the law of the state of the plaintiff's domicile will apply . . ." (citation omitted)). The same is true for courts making choice of law determinations in the context of a defamation claim, without reference to an anti-SLAPP statute. *Cf.*, *DeRoburt v. Gannett Co.*, 83 F.R.D. 574, 580–81 (D. Haw. 1979) ("[T]he state of the plaintiff's domicil [sic] if the matter complained of has there been published" is the state with the greatest interest. (citation omitted)); *see also* Restatement (Second) of Conflict of Laws § 150 (1971) ("When a . . . legal person, claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the . . . legal person, had its principal place of business at the time, if the matter complained of was published in that state.").

California's interest in having its anti-SLAPP law apply is particularly strong in this case. California enacted its anti-SLAPP law because the California Legislature found that "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech" and "that it is in the public interest to encourage continued participation in matters of public significance." Cal. Civ. Proc. Code § 425.16. Here, Mr. Ratner's lawsuit threatens to chill speech that is a part of an important and historic public discussion on sexual assault and rape in Hollywood. As one of the most high-

profile producers and directors in Hollywood, Mr. Ratner's conduct is an important part of that discussion. And Mr. Ratner's conduct already is very much a part of that discussion. More than a dozen actresses and other women have accused him of sexual assault and harassment—much of the alleged conduct having occurred in California and in the course of his work in Hollywood.[9] California thus has a strong interest in ensuring a robust discussion about an issue of such importance to the State and one of its most high-profile residents.

In short, California has the strongest interest in preventing a lawsuit that could chill speech where: (a) the claimed sexual assault occurred within its borders; (b) the accused is a California resident; (c) the accuser was a California resident at the time of the rape; (d) the alleged injury occurred in California; (e) the accused has strong and significant ties to California; and (f) the state is embroiled in a very important and public discourse about sexual assault and harassment in Hollywood, of which this statement is an important part.

**2. Mr. Ratner cannot meet his burden under California's anti-SLAPP statute**

Mr. Ratner cannot meet the requirements of California's anti-SLAPP law. Paragraph (b)(1) of California's anti-SLAPP statute provides as follows:

---

[9] *See, e.g.*, Ryan Faughnder & Daniel Miller, *Warner Bros. Cuts Ties with Brett Ratner After Sexual Misconduct Allegations*, L.A. Times, Nov. 1, 2017, http://www.latimes.com/business/hollywood/la-fi-ct-brett-ratner-warner-bros-20171101-story.html.

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16. An anti-SLAPP motion proceeds in two steps. In the first step, or "prong one" the court determines whether the defendant has made a prima facie showing that the challenged cause of action (or the plaintiff's entire complaint) arises from the defendant's constitutionally protected petitioning or free-speech activity. *Makaeff*, 715 F.3d at 261 ("[T]he moving defendant must make a *prima facie* showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech."). Once that showing is made, the burden shifts to the defendant, under prong two, to show that he is likely to succeed on the merits of his claim. *See id.*; *Cho v. Chang*, 219 Cal. App. 4th 521, 526-27 (2013); Cal. Civ. Proc. Code § 425.16(b)(1), (b)(2); *Contemporary Servs. Corp. v. Staff Pro Inc.*, 61 Cal. Rptr. 3d 434, 443 (Ct. App. 2007) ("The plaintiff must demonstrate the complaint is both legally sufficient and is supported by a prima facie showing of facts sufficient to sustain a favorable judgment if the evidence submitted by the plaintiff is given credit.").

**a. Ms. Kohler's FB Post clearly relates to a matter of public concern**

California's anti-SLAPP statute defines "act[s] in furtherance of a person's right of petition or free speech" as including "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest. Cal. Civ. Pro. Code § 425.16(e). Courts have applied the California anti-SLAPP statute to speech regarding accusations of rape or sexual assault. *Heineke v. Santa Clara Univ*., No. 17-CV-05285-LHK, 2017 WL 6026248, at *7 (N.D. Cal. Dec. 5, 2017) (finding that claims based on allegedly false accusations of sexual assault are protected speech under California's Anti-SLAPP law); *Dickinson v. Cosby*, 225 Cal. Rptr. 3d 430, 442 (Ct. App. 2017) (finding that letters and press releases regarding rape accusations would constitute speech in connection with a public issue).

Here, Ms. Kohler's statement was made on Facebook, in a place open to the public, and clearly concerned a matter of public concern. *See Equilon Enterprises v. Consumer Cause, Inc.*, 52 P.3d 685, 687 (Cal. 2002) (holding that a defendant need not show that plaintiff's action "was brought with the *intent* to chill the defendant's exercise of constitutional speech or petition rights" (emphasis added)); *Briggs v. Eden Council for Hope & Opportunity*, 969 P.2d 564, 572 (Cal. 1999) (acknowledging that courts "whenever possible, should interpret the First Amendment and section 425.16 in a manner favorable to the exercise of freedom

of speech, not its curtailment" (quotation marks omitted)). Indeed, one need only to read a newspaper, go onto the Internet, or look at the most recent cover of Time Magazine, to see the unprecedented public discourse concerning the issues of sexual misconduct raised in Ms. Kohler's FB Post. *See, e.g.*, Melissa Chan, *The Story Behind the Woman You Don't See on TIME's Person of the Year Cover*, TIME, Dec. 6, 2017, http://time.com/5052362/time-person-of-the-year-2017-arm-cover/; Sophie Gilbert, *The Movement of #MeToo: How a Hashtag Got Its Power*, The Atlantic, Oct. 16, 2017, https://www.theatlantic.com/entertainment/archive/2017/10/the-movement-of-metoo/542979/. Accordingly, the first prong of the analysis is clearly satisfied here.

**b. Mr. Ratner cannot demonstrate a probability of prevailing on his claim**

Having satisfied prong one, Mr. Ratner's Complaint can survive only if he can demonstrate a "probability of prevailing" on the merits. *DuPont Merck Pharm. Co. v. Superior Court*, 92 Cal. Rptr. 2d 755, 760 (Ct. App. 2000), *as modified* (Jan. 25, 2000) ("It would defeat the obvious purposes of the anti-SLAPP statute if mere allegations in an unverified complaint would be sufficient to avoid an order to strike the complaint."). For the exact same reasons described in Section I above, however, Mr. Ratner's threadbare Complaint does not come close to meeting this standard. Because he is a public figure, Mr. Ratner must demonstrate not only that Ms. Kohler's statement was false, but that it was made

with knowledge or a reckless disregard of its falsity. While Mr. Ratner alleges that Ms. Kohler's FB Post is "entirely false, fabricated, and fictional," Compl. ¶ 8, as discussed above, this is nothing more than a conclusory statement that lacks any factual support and is insufficient as a matter of law. *See McKee v. Cosby*, 236 F. Supp. 3d 427, 452 (D. Mass. 2017) ("Plaintiff's complaint fails to provide any minimal factual development in support of the assertion that these statements are 'false.'"), *aff'd*, 874 F.3d 54 (1st Cir. 2017). In other words, Mr. Ratner's boilerplate Complaint, which does not even satisfy the relevant pleading requirements and should be dismissed under Rule 12(b)(6), cannot possibly demonstrate a likelihood of success on the merits, as required by the California anti-SLAPP statute. *See Makaeff*, 715 F.3d at 261 ("Under [California's Anti-SLAPP standard] the claim should be dismissed if the plaintiff presents an insufficient legal basis for it.").

## IV. CONCLUSION

For the reasons set out above, Defendant Melanie Kohler respectfully requests that the Court dismiss the Complaint with prejudice and/or strike the Complaint under California's Anti-SLAPP statute and enter Judgment in her favor.

DATED: Honolulu, Hawaii, January 2, 2018.

/s/ David M. Louie
DAVID M. LOUIE, ESQ.
NICHOLAS R. MONLUX, ESQ.
JESSE D. FRANKLIN-MURDOCK, ESQ.
ROBERTA A. KAPLAN, ESQ.
JULIE E. FINK, ESQ.
JOSHUA MATZ, ESQ.
DAVIDA P. BROOK, ESQ.

Attorneys for Defendant
MELANIE KOHLER