IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BRETT RATNER, | ) | Civ. No. 17-00542 HG-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MELANIE KOHLER; JOHN AND/OR | ) | |
| JANE DOES 1-10, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT MELANIE KOHLER'S MOTION TO DISMISS THE COMPLAINT FILED NOVEMBER 1, 2017**

**and**

**HOLDING IN ABEYANCE DEFENDANT MELANIE KOHLER'S SPECIAL MOTION TO STRIKE THE COMPLAINT FILED NOVEMBER 1, 2017 (ECF No. 26)**

On or about October 20, 2017, Defendant Melanie Kohler, who is a resident and citizen of the State of Hawaii, posted a statement on her Facebook page. The statement claimed that Hollywood film director and producer Brett Ratner raped Defendant Kohler while she was living in California in either 2004 or 2005.

Plaintiff Brett Ratner filed a Complaint against Defendant Kohler, alleging a claim for defamation based on her Facebook post.

Defendant Kohler filed a Motion to Dismiss and a Special Motion to Strike pursuant to a California statute barring strategic lawsuits against public participation ("anti-SLAPP statute").

Defendant Kohler requests that the Court dismiss Plaintiff Ratner's lawsuit on the basis that he failed to sufficiently plead a defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant also seeks to strike the Complaint pursuant to the California anti-SLAPP statute.[1]

Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is **DENIED.**

Defendant's Special Motion to Strike pursuant to the California anti-SLAPP statute is **HELD IN ABEYANCE.**

## PROCEDURAL HISTORY

On November 1, 2017, Plaintiff filed a Complaint. (ECF No. 1).

On January 2, 2018, Defendant filed DEFENDANT MELANIE KOHLER'S MOTION TO DISMISS THE COMPLAINT FILED NOVEMBER 1, 2017, AND TO STRIKE THE COMPLAINT FILED NOVEMBER 1, 2017. (ECF No. 26).

On January 8, 2018, the Court set a briefing schedule and set the hearing on Defendant's Motion for Monday, February 12, 2018. (ECF No. 31).

---

[1] Plaintiff argues in his Opposition that Defendant's anti-SLAPP motion was "improperly filed as part of her 12(b)(6) motion to dismiss." (Pla.'s Opp. at p. 12, ECF No. 34). Plaintiff is incorrect. Federal courts have found that it is proper procedure for a defendant to combine a 12(b)(6) motion and an anti-SLAPP motion to strike into one pleading as long as the separate motions are properly designated in the filing, as was done here. Espinoza v. City of Imperial, 2009 WL 10671316, *10 (S.D. Cal. March 4, 2009); cf. Phillips v. KIRO-TV, Inc., 817 F.Supp.2d 1317, 1328 (W.D. Wash. 2011).

On January 10, 2018, the hearing was advanced to Thursday, February 8, 2018, at the Defendant's request.  (ECF No. 33).

On January 22, 2018, Plaintiff filed PLAINTIFF BRETT RATNER'S MEMORANDUM IN OPPOSITION TO DEFENDANT MELANIE KOHLER'S MOTION TO DISMISS COMPLAINT FILED NOVEMBER 1, 2017, AND TO STRIKE THE COMPLAINT FILED NOVEMBER 1, 2017.  (ECF No. 34).

On February 5, 2018, Defendant filed DEFENDANT MELANIE KOHLER'S REPLY TO PLAINTIFF BRETT RATNER'S MEMORANDUM IN OPPOSITION TO DEFENDANT MELANIE KOHLER'S MOTION TO DISMISS COMPLAINT, FILED NOVEMBER 1, 2017, AND TO STRIKE THE COMPLAINT, FILED NOVEMBER 1, 2017.  (ECF No. 35).

On February 8, 2018, the Court held a hearing on Defendant Kohler's Motion to Dismiss and to Strike (ECF No. 26).  At the hearing, the Court denied Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  This Order sets forth the basis for the oral ruling at the February 8, 2018 hearing.

## BACKGROUND

The Complaint asserts that Plaintiff Brett Ratner "is an accomplished and well known film director and producer who resides in Los Angeles and is and has been a citizen of the State of California at all times relevant hereto."  (Complaint at ¶ 4, ECF No. 1).  The Complaint states Defendant Melanie Kohler is a resident and citizen of the State of Hawaii.  (Id. at ¶ 5).

Plaintiff alleges that on or about October 20, 2017, Defendant Melanie Kohler "recklessly and/or intentionally posted

a statement on her Facebook page claiming that 'Brett Ratner raped [her]'." (Id. at ¶ 7). The entirety of the Facebook post is attached to Defendant's Motion, as follows:

> My hands are shaking even as I try to write this. It's not something I've ever told anyone in my entire life. Not even my closest friends at the time.
> Brett Ratner raped me. He is a famous director and producer in Hollywood.
> If there is any chance of changing the hollywood culture, the american culture, it has to happen now while people are listening.
> I tell this story in hopes that if he's done it to others that they might have the confidence to come forward.
> And if he hasn't, that maybe he can be accountable for the way he's treated the nobodies of the world or at least the way he treated me.
> Even if he treats all the somebodies of the world with respect and decency, he is not a public monster like Harvey and I don't think anyone has much bad to say about him professionally, that doesn't mean he can do this in the dark shadows of the night when he thinks no one is looking. He was a predator and a rapist on at least on one night in Hollywood about 12 years ago.
>
> It happened when I worked at Endeavor Talent Agency in hollywood. It was 2004 or 2005. I won't go into the details here to spare the people who don't want to hear them but I'm willing to share my story with anyone who needs to hear it.
> Long story short, he preyed on me as a drunk girl who was alone at a club at the end of the night, he took me back to Robert Evans house, he forced himself upon me after I said no and no and no again, and then left me there. He just got up, didn't say a word, got in his car and left and I laid there humiliated and broken on the floor. The rest of the night is fuzzy, I must have stumbled out of the house and called a cab and I went home and erased it from my mind.
> I'm embarrassed, humiliated, ashamed, and wish I could go back to forgetting it ever happened. But if I do that, if we all do that, then it keeps happening. We have to come forward. I can't be an advocate for women speaking out if I don't speak out too.
> Brett Ratner raped me. I'm saying his name, I'm saying it publicly. Now at least I can look at myself in the mirror and not feel like part of me is a coward or a hypocrite. I'm standing up and saying this happened to

me and it was not ok.
Come what may, it is the right thing to do.

(Melanie Kohler Facebook post, attached as Ex. A to Def.'s Motion, ECF No. 26-4).

Plaintiff Ratner alleges the statement is "entirely false, fabricated, and fictional." (Complaint at ¶ 8, ECF No. 1). The Complaint asserts that Defendant Kohler made the statement "with knowledge of its falsity, maliciously, and with the intent to harm Plaintiff's reputation and standing." (Id. at ¶ 9).

The Complaint states that Plaintiff believes that the Facebook statement constitutes "libel per se." (Id. at ¶ 10). The Complaint alleges that as a result of Defendant Kohler's post Defendant Ratner "has suffered injuries to his personal and professional reputations in amounts to be proven at trial." (Id. at ¶ 12).

## STANDARD OF REVIEW

### Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6)

A court must dismiss a complaint as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6) where it fails "to state a claim upon which relief can be granted." Rule (8)(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of the non-

moving party.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir.
1998).  Conclusory allegations of law and unwarranted inferences
are insufficient to defeat a motion to dismiss.  Id. at 699.  The
Court need not accept as true allegations that contradict matters
properly subject to judicial notice or allegations contradicting
the exhibits attached to the complaint.  Sprewell v. Golden State
Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

    In Bell Atl. Corp. v. Twombly, the United States Supreme
Court addressed the pleading standards under the Federal Rules of
Civil Procedure in the anti-trust context.  550 U.S. 544 (2007).
The Supreme Court stated that Rule 8 of the Federal Rules of
Civil Procedure "requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action," and
that "[f]actual allegations must be enough to raise a right to
relief above the speculative level."  Id. at 555.

    Most recently, in Ashcroft v. Iqbal, the Supreme Court
clarified that the principles announced in Twombly are applicable
in all civil cases.  129 S.Ct. 1937 (2009).  The Court stated
that "the pleading standard Rule 8 announces does not require
'detailed factual allegations,' but it demands more than an
unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.
at 1949 (citing Twombly, 550 U.S. at 555).

    To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face.  Id. (quoting Twombly, 550
U.S. at 570).  A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (citing Twombly, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Id. (quoting Twombly, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  AE ex rel. Hernandez v. Cnty of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotations omitted).

**Special Motion To Strike Pursuant To Cal. Code Civ. P. § 425.16**

California's anti-SLAPP statute states:

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. P. § 425.16(b)(1).

There are two steps in analyzing a motion to strike pursuant
to California's anti-SLAPP statute.

**First**, the defendant must make a prima facie showing that
the plaintiff's suit arises from an act in furtherance of the
defendant's rights of free speech on a public issue. <u>Jordan-
Benel v. Universal City Studios, Inc.</u>, 859 F.3d 1184, 1188 (9th
Cir. 2017); <u>Park v. Board of Trustees of Cal. State Univ.</u>, 393
P.3d 905, 907 (Cal. 2017).

**Second**, if the defendant establishes a prima facie case, the
burden shifts to the plaintiff to show a reasonable probability
of prevailing on the challenged claim. <u>Jordan-Benel</u>, 859 F.3d at
1188. The plaintiff's burden at step two is relatively low.
<u>Roberts v. McAfee, Inc.</u>, 660 F.3d 1156, 1163 (9th Cir. 2011);
<u>Mindys Cosmetics, Inc. v. Dakar</u>, 611 F.3d 590, 598 (9th Cir.
2010).

If plaintiff cannot meet its minimal burden of stating and
substantiating a legally sufficient claim, the claim is stricken
pursuant to the statute. <u>Jordan-Benel</u>, 859 F.3d at 1188-89
(internal citation and quotations omitted).

## <u>ANALYSIS</u>

## I.  Conflict of Law

The Complaint asserts that Plaintiff Brett Ratner is a
resident and citizen of the State of California. (Complaint at ¶

8

4, ECF No. 1).  The Complaint alleges that Defendant Melanie
Kohler is a resident and citizen of the State of Hawaii.  (Id. at
¶ 5, ECF No. 1).

This Court has subject-matter jurisdiction based on
diversity of the Parties.  28 U.S.C. § 1332(a)(1).  There is no
federal question asserted in the Complaint.  See 28 U.S.C. §
1331.

In a diversity case, a federal court must apply the conflict
of law rules of the state in which it sits to determine what
substantive law applies.  Lemen v. Allstate Ins. Co., 938 F.Supp.
640, 643 (D. Haw. 1995); DeRobert v. Gannett Co., Inc., 83 F.R.D.
574, 576 (D. Haw. 1979).

Hawaii's conflict of law jurisprudence requires the Court to
evaluate which state has the most significant relationship to the
case in order to determine the applicable substantive law to
apply.  Restatement (2d) Conflict of Laws § 145 (1971); Lewis v.
Lewis, 748 P.2d 1362, 1365 (Haw. 1988).

The Hawaii Supreme Court set forth its conflict of law
jurisprudence in Mikelson v United Servs. Auto. Ass'n, 111
P.3d 601 (Haw. 2005).  The Mikelson court observed the following:

> This court has moved away from the traditional and
> rigid conflict-of-laws rules in favor of the modern
> trend towards a more flexible approach looking to the
> state with the most significant relationship to the
> parties and subject matter.  This flexible approach
> places primary emphasis on deciding which state would
> have the strongest interest in seeing its laws applied
> to the particular case.  Hence, this court has said
> that the interests of the states and applicable public
> policy reasons should determine whether Hawai'i law or
> another state's law should apply.  The preferred

analysis ... would be an assessment of the interests
and policy factors involved with a purpose of arriving
at a desirable result in each situation.

_Mikelson_, 111 P.3d at 607 (citations, brackets, and

quotation marks omitted); see _Del Monte Fresh Produce (Hawaii),_

_Inc. v. Fireman's Fund Ins. Co_., 183 P.3d 734, 741 (Haw. 2007).

In defamation cases, Hawaii courts looks to Sections 145-150

of the Restatement (Second) Conflict of Laws for guidance.

_Miracle v. New Yorker Magazine_, 190 F.Supp.2d 1192, 1198 (D. Haw.

2001).

Section 150(2) of the Restatement (Second) of Conflict of

Laws applies to cases involving allegedly defamatory statements

that are broadcast or published in more than one state.  The

Restatement provides that a court should ordinarily apply the law

of the state of the plaintiff's domicile when the allegedly

defamatory statement was broadcast to multiple states.

Section 150 of the Restatement (2d) Conflict of Laws

provides, as follows:

### § 150. Multistate Defamation

(1)   The rights and liabilities that arise from defamatory
      matter in any one edition of a book or newspaper, or
      any one broadcast over radio or television, exhibition
      of a motion picture, or similar aggregate communication
      are determined by the local law of the state which,
      with respect to the particular issue, has the most
      significant relationship to the occurrence and the
      parties under the principles stated in § 6.

**(2)   When a natural person claims that he has been defamed
      by an aggregate communication, the state of most
      significant relationship will usually be the state
      where the person was domiciled at the time, if the
      matter complained of was published in that state.**

(3) When a corporation, or other legal person, claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation, or other legal person, had its principal place of business at the time, if the matter complained of was published in that state.

(emphasis added).

Here, Plaintiff is a resident and citizen of the State of California. (Complaint at ¶ 4, ECF No. 1). He claims that he is a "well known film director and producer who resides in Los Angeles." (Id.) The Complaint alleges that Plaintiff "has suffered injuries to his personal and professional reputations." (Id. at ¶ 12).

California is the state with the most significant interest in having its laws applied in this case.

The Complaint asserts that Plaintiff made the allegedly defamatory statement on Facebook. (Id. at ¶ 7). Facebook is a social media networking service with approximately 1.79 billion active users. Packingham v. North Carolina, 137 S.Ct. 1730, 1735 (2017).

Plaintiff claims in his Opposition that Defendant was located in Hawaii when she made the Facebook post. It is not disputed, however, that the Facebook post was broadcast or made available to users in multiple states, including California.

The Complaint indicates that the Defendant's Facebook statement caused damage to Plaintiff in California, the state of his domicile. (Complaint at ¶ 12, ECF No. 1).

Comment (e) to Section 150 of the Restatement (Second)

Conflict of Laws explains that the law of the state of the Plaintiff's domicile should provide the substantive law, unless another state has a more significant relationship to the occurrence and the parties.  Restatement (2d) Conflict of Laws § 150, comment (e).  The Comment provides that another state may have a more significant relationship to the case when:

    (a)   the plaintiff is better known in this state than in the state of his domicil, or

    (b)   the matter claimed to be defamatory related to an activity of the plaintiff that is principally located in this state, or

    (c)   the plaintiff suffered greater special damages in this state than in the state of his domicil, or

    (d)   the place of principal circulation of the matter claimed to be defamatory was in this state.

An assessment of the factors in comment (e) demonstrates that California is the state with the most significant relationship to this case.  There is no basis to find that Plaintiff Ratner is more well-known in Hawaii than in California.

California has a significant interest in this case as Plaintiff's purported damages would most likely occur in California where he resides and conducts his business.  In addition, Defendant alleges in her Facebook post that the purported rape took place in California.  There is no evidence that the circulation of Defendant's Facebook post was limited to users in Hawaii and was not available to users in California.

In Miracle v. New Yorker Magazine, 190 F.Supp.2d 1192, 1198 (D. Haw. 2001), the District Court for the District of Hawaii

applied the Hawaii conflict of law rules to determine the applicable substantive law for a defamation cause of action.

In the complaint in _Miracle_, the plaintiff alleged that the defendant New Yorker Magazine published an article that defamed her. _Id._ at 1197. The District Court found that under Hawaii law, Section 150(2) of Restatement of Conflict of Laws applied to determine the substantive law in the defamation case. _Id._ The District Court explained that the alleged defamation occurred in multiple jurisdictions because the New Yorker Magazine was published in multiple states. The District Court found that pursuant to Section 150(2) of the Restatement, the substantive state law of plaintiff's domicile applied to the case. _Id._

Numerous federal courts sitting in diversity have applied Section 150 of the Restatement (Second) of Conflict of Laws to find that the law of the plaintiff's domicile is the applicable substantive law in similar defamation cases. _McKee v. Cosby_, 236 F.Supp.3d 427, 436-37 (D. Mass. 2017) (applying Michigan law to a defamation cause of action because plaintiff was domiciled in Michigan at the time of publication); _Adelson v. Harris_, 973 F.Supp.2d 467, 475-81 (S.D.N.Y. 2013) (applying New York conflict of law rules to determine that the substantive law of plaintiff's domicile applied in a defamation case); _DeRoburt v. Gannett Co., Inc._, 83 F.R.D. 574, 580-83 (D. Haw. 1979); _see_ _Tobinick v. Novella_, 108 F.Supp.3d 1299, 1304 (S.D. Fla. 2015) (finding California law had the most significant relationship to the claims because plaintiff's damages were most likely suffered in

13

California).

California law provides the substantive law in this case. Mikelson, 111 P.3d at 607; Restatement (2d) Conflict of Laws § 150(2).

## II. Defendant's Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6)

Under California law, defamation is the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage. Price v. Stossel, 620 F.3d 992, 999 (9th Cir. 2010) (quoting Gilbert v. Sykes, 53 Cal.Rptr.3d 752, 764 (Cal. Ct. App. 2007)).

### A. Plaintiff Ratner Is A Public Figure

If plaintiff is a public figure, he must establish that the defamatory statement was made with actual malice, that is, knowledge that it was false, or with reckless disregard for the truth. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); Walker v. Kiousis, 114 Cal. Rptr.2d 69, 80 (Cal. Ct. App. 2001); Reader's Digest Ass'n v. Superior Court, 690 P.2d 610, 615 (Cal. 1984).

In this case, there is no dispute that Plaintiff Brett Ratner is a public figure. Plaintiff's Complaint asserted that he is "an accomplished and well known film director and producer." (Complaint at ¶ 4, ECF No. 1). The Ninth Circuit

Court of Appeals has stated that "artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done" is a public figure for defamation purposes. Manzari v. Associated Newspapers LTD., 830 F.3d 881, 888 (9th Cir. 2016) (quoting Cepeda v. Cowles Magazines & Broad., Inc., 392 F.2d 417, 419 (9th Cir. 1968)).

**B.    Plaintiff Stated Sufficient Facts To State A Claim For Defamation**

**1.    Accusations of Rape Are Libel Per Se**

Plaintiff's Complaint contends that the rape accusations against him constitute "libel per se." (Id. at ¶ 10).  Libel is a form of defamation effected in writing. Doe 2 v. Superior Court, 206 Cal.Rptr.3d 60, 68 (Cal. Ct. App. 2016); Shively v. Bozanich, 80 P.3d 676, 682-83 (Cal. 2003).

California law provides three distinct, statutorily-prescribed categories of statements that are libelous on their face. Cal. Civ. Code § 45.  Statements that either (1) expose a person to hatred, contempt, ridicule, or obloquy, (2) cause him to be shunned or avoided, or (3) have a tendency to injure one in his occupation are libel per se.  Id.

Under California law, statements that falsely impute the commission of a crime are libelous on their face.  Yow v. Nat'l Enquirer, Inc., 550 F.Supp.2d 1179, 1183 (E.D. Cal. 2008).

Here, Defendant has accused Plaintiff of rape.  Such an accusation, if false, is libelous on its face.  Id. at 1190.

Allegations of far less serious conduct have been found to be libel per se.  Recently, a federal district court in California found that allegations that a magazine falsely published a story implying that singer Blake Shelton entered an alcohol rehabilitation center were sufficient to plead a claim for libel per se.  <u>Shelton v. Bauer Pub. Co., L.P.</u>, 2016 WL 1574025, *9 (C.D. Cal. 2016).

Allegations of illegal drug use have also been found to state a claim for libel per se.  <u>Yow</u>, 550 F.Supp.2d at 1183.

Defendant Kohler's allegedly false allegations of rape constitute libel per se.

## 2.  Actual Malice

In <u>Masson v. New Yorker Magazine, Inc.</u>, 501 U.S. 496, 511 (1991), the United States Supreme Court discussed the element of "actual malice" under California law.  The Court explained,

> We have used the term actual malice as a shorthand to describe the First Amendment protections for speech injurious to reputation, and we continue to do so here. But the term can confuse as well as enlighten.  In this respect, the phrase may be an unfortunate one.  In place of the term actual malice, it is better practice that jury instructions refer to publication of a statement with knowledge of falsity or reckless disregard as to truth or falsity.

> <u>Id.</u> (internal citation omitted).

Courts have found that if a complaint alleges facts that raise a reasonable inference that the defendant did not believe what she published, it is not appropriate to dismiss the complaint for failure to sufficiently plead actual malice.  <u>See</u>

McDonald v. Wise, 769 F.3d 1202, 1220 (10th Cir. 2014); Ultimate Creations, Inc. v. McMahon, 515 F.Supp.2d 1060, 1066 (D. Ariz. 2007) (finding that a public figure stated a claim for defamation with actual malice where he alleged the defendants knowingly sold a DVD containing statements that impeached the plaintiff's honesty, integrity, and reputation); Flowers v. Carville, 310 F.3d 1118, 1130-31 (9th Cir. 2002) (finding that the plaintiff sufficiently stated a claim when she "alleged in her complaint that defendants knew that their statements were false or acted with reckless disregard of the truth.").

In his Complaint, Plaintiff provides sufficient facts to plead a defamation claim with actual malice. Plaintiff denies that the rape took place and claims Defendant Kohler knew her accusation was false when she made the Facebook post. Plaintiff Ratner alleges that Defendant Kohler's statement that he raped her was "deliberately false and malicious." (Complaint at ¶ 1, ECF No. 1). He claims her Facebook post was "entirely false, fabricated, and fictional." (Id. at ¶ 8). The Complaint alleges that Defendant made the rape accusation "with knowledge of its falsity, maliciously, and with the intent to harm Plaintiff's reputation and standing." (Id. at ¶ 9).

Defendant Kohler's Motion to Dismiss primarily relies on cases where a public figure had sued publishers and journalists for defamatory articles about them. In those cases, there were no allegations that the publishers knew the stories were false or purposefully avoided investigation into the veracity of their

articles with intent to avoid the truth. <u>Michel v. NYP Holdings,
Inc.</u>, 816 F.3d 686, 703 (11th Cir. 2016); <u>Biro v. Conde Nast</u>, 807
F.3d 541, 545 (2d Cir. 2015); <u>Pippen v. NBCUniversal Media, LLC</u>,
734 F.3d 610, 614 (7th Cir. 2013).

This case is not a defamation case against a publisher or a
journalist investigating events about third parties. Rather, the
Complaint here alleges that Defendant Kohler knew her Facebook
post was false when she published it because the events she
recounted never took place. Plaintiff Ratner alleges that
Defendant's Facebook post was wholly fabricated.

In <u>Chastain v. Hodgdon</u>, 202 F.Supp.3d 1216, 1221-22 (D. Kan.
2016), the District Court for the District of Kansas addressed
similar issues involving an online Facebook post accusing the
plaintiff of sexual assault.

In <u>Chastain</u>, the defendant posted a narrative statement on
Facebook accusing the plaintiff, a mayoral candidate, of sexual
assault and attempted rape. The defendant filed a motion to
dismiss on the basis that the plaintiff did not provide
sufficient facts to allege actual malice. The federal district
court denied the defendant's motion to dismiss for failure to
state a claim.

The plaintiff in <u>Chastain</u> alleged that the defendant acted
with actual malice because she knew when she published her
Facebook post that the sexual assault and attempted rape never
happened. The court explained,

In her Facebook post, defendant stated that plaintiff

18

sexually assaulted or attempted to rape her, going into
great detail in her narrative.  Such recounting from
defendant's perspective necessarily requires a lucid
memory of the event as experienced by defendant
herself.  Of course, if the event forming the basis of
defendant's accusation never occurred, as the court is
required to assume at this stage, such a first-person
narrative would require that defendant knew that the
events were false because she necessarily never
experienced them.  If defendant knew that the events
were false, and nonetheless wrote the detailed
narrative describing exactly how plaintiff sexually
assaulted or attempted to rape her when it actually
never occurred, it is axiomatic that she wrote the
narrative with actual malice, or actual knowledge that
it was false.

Id. at 1221-22.

The defendant in Chastain sought reconsideration of the

district court's ruling denying her motion to dismiss.  The

district court denied defendant's motion to reconsider.  Chastain

v. Hodgdon, 2016 WL 5109944, *2 (D. Kan. Sept. 20, 2016).  The

district court explained in its order denying reconsideration

that dismissal was inappropriate pursuant to Fed. R. Civ. P.

12(b)(6).  Id.  The district court stated that "because defendant

and plaintiff were the only two direct actors in events that

either did or did not occur, plaintiff's claim of falsity

supports both that the statement was false and that defendant

necessarily knew it was false at the time she said it—because,

according to him, it never occurred."  Id.

 Just as in Chastain, Defendant Kohler's Facebook post

provided a narrative of events describing the alleged rape by

Plaintiff Ratner.  Defendant stated that it happened when she

worked at Endeavor Talent Agency in Hollywood, in either 2004 or

19

2005.  Defendant stated that she was alone at a club at the end

of a night and claims Plaintiff Ratner took her back to "Robert

Evans house, he forced himself upon [her] after [she] said no and

no and no again, and then left [her] there...."  (Melanie Kohler

Facebook post, attached as Ex. A to Def.'s Motion, ECF No. 26-4).

California courts have explained that actual malice may be

inferred if the plaintiff demonstrates that the defamatory

statement had no basis in fact, was fabricated by the defendant,

or was the product of her imagination.  Christian Research

Institute v. Alnor, 55 Cal.Rptr.3d 600, 612 (Cal. Ct. App. 2007)

(citing Amant v. Thompson, 390 U.S. 727, 732 (1968)); Nguyen-Lam

v. Cao, 90 Cal.Rptr.3d 205, 213-14 (Cal. Ct. App. 2009) (finding

actual malice where the inference could be drawn that defendant

had no basis to falsely claim the plaintiff was a Communist).

Here, there are sufficient allegations that Defendant acted

with actual malice based on the claim that Defendant knew at the

time of publication that the purported rape never occurred.

Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P.

12(b) is **DENIED.**


### III. Defendant's Special Motion To Strike Pursuant To The California Anti-SLAPP Statute

California has enacted an anti-SLAPP statute designed to

protect individuals who have exercised their right to free speech

from being subject to frivolous litigation.  Hilton v. Hallmark

Cards, 599 F.3d 894, 902 (9th Cir. 2010); Batzel v. Smith, 333

F.3d 1018, 1024 (9th Cir. 2003).

The Ninth Circuit Court of Appeals has held that California's anti-SLAPP statute can be invoked by a defendant who is in federal court on the basis that it is a substantive law. Price, 620 F.3d at 999 (citing Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1109 (9th Cir. 2003); United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 970-73 (9th Cir. 1999)).

California's Anti-SLAPP statute provides, as follows:

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. P. § 425.16(b)(1).

Courts evaluate a defendant's anti-SLAPP motion in two steps.

**First**, to prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech.  Makaeff v. Trump University, LLC, 715 F.3d 254, 261 (9th Cir. 2013).

**Second**, if defendant makes a prima facie showing, the burden then shifts to the plaintiff to establish a reasonable probability that he will prevail on his claim in order to survive dismissal under the California statute.  Id.

**A. Defendant's Prima Facie Showing Under The California Anti-SLAPP Statute**

The first step in analyzing an anti-SLAPP motion is determining whether the defendant made an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's right to free speech. <u>Vess</u>, 317 F.3d at 1110.

California's anti-SLAPP statute defines such an act to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." <u>See</u> Cal. Code Civ. P. § 425.16(e).

Defendant Kohler asserts that her Facebook post was made on a public forum and taken in furtherance of her right to free speech in connection with an issue of public interest. It is well settled under California law that web sites accessible to the public are "public forums" for purposes of the anti-SLAPP statute. <u>Barrett v. Rosenthal</u>, 146 P.3d 510, 514 n.4 (Cal. 2006); <u>Wong v. Tai Jing</u>, 117 Cal.Rptr.3d 747, 759 (Cal. Ct. App. 2010). Plaintiff does not dispute that her Facebook post was made on an open forum.

The California anti-SLAPP statute does not provide a definition of "an issue of public interest." <u>Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.</u>, 946 F.Supp.2d 957, 968 (N.D. Cal. 2013).

Courts applying the California anti-SLAPP statute have held that public accusations of rape or sexual assault against a

22

public figure are connected with an issue of public interest. Heineke v. Santa Clara University, 2017 WL 6026248, *7 (N.D. Cal. Dec. 5, 2017) (finding claims based on allegedly false accusations of sexual assault are protected speech under California's anti-SLAPP statute); Dickinson v. Cosby, 225 Cal.Rptr.3d 430, 442 (Cal. Ct. App. 2017) (finding that letters and press releases regarding rape accusations constitute speech in connection with a public issue).

Plaintiff does not dispute that Defendant's Facebook post concerns an issue of public interest for purposes of the California anti-SLAPP statute.

Defendant has met her prima facie burden under Cal. Civ. P. Code § 425.16 to show that her Facebook post was made in furtherance of her right to free speech on a matter of public interest.

**B.     Plaintiff Must Establish A Reasonable Probability That He Will Prevail**

The California anti-SLAPP statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech, but the action is subject to dismissal when the plaintiff cannot substantiate a legally sufficient claim.  Hilton, 599 F.3d at 908.

Under the second step of the anti-SLAPP statute, the burden shifts to Plaintiff Ratner to establish a "reasonable probability" that he will prevail on his claim for defamation.

Makaeff, 715 F.3d at 261.

The term "reasonable probability" in the anti-SLAPP statute has a specialized meaning. Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 598 (9th Cir. 2010). The California Supreme Court has explained that under the reasonable probability standard, the plaintiff need only establish that the case has "minimal merit." Navellier v. Sletten, 52 P.3d 703, 712 (Cal. 2002).

The Ninth Circuit Court of Appeals has explained that to withstand an anti-SLAPP motion to strike in California:

> The plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.
>
> Manufactured Home Communities, Inc. v. Cnty. of San Diego,

655 F.3d 1171, 1176-77 (9th Cir. 2011) (quoting Wilson v. Parker, Covert & Chidester, 50 P.3d 733, 739 (2002)).

### 1. Plaintiff's Citation To A YouTube Video Is Not Evidence

In his Opposition, Plaintiff cites to a YouTube video. Plaintiff states the video is "*Good Morning America: Filmmaker Sues Sex Assault Accuser* (ABC News broadcast Nov. 8, 2017), *available at* https://www.youtube.com/watch?v=H6Xs7umx CU."

(Pla.'s Opp. at pp. 16-17, ECF No. 34). Plaintiff asserts that the video supports a finding that Defendant has made inconsistent statements about the alleged rape.

Plaintiff has not demonstrated that the YouTube video he cites to constitutes admissible evidence for purposes of an anti-SLAPP motion to strike. Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 840 (9th Cir. 2001).

Courts have held that YouTube videos are self-authenticating under Federal Rule of Evidence 902(11) if the party offering the video provides certification by the custodian of the records that the records meet the requirements of Fed. R. Evid. 803(6)(A)-(C). United States v. Hassan, 742 F.3d 104, 132-34 (4th Cir. 2014). The records must be (A) made near the time by—or from information transmitted by—someone with knowledge, (B) kept in the course of a regularly conducted activity of a business, and (C) making the record was a regular practice of that activity. Id.

Plaintiff has not provided a physical copy of the YouTube video with a certification from the custodian of records that would support a finding that the YouTube video constitutes admissible evidence.

In Randazza v. Cox, 2014 WL 1407378, *4 (D. Nev. April 10, 2014), the federal district court found a YouTube video inadmissible because the plaintiff had not proffered the certificate of YouTube's custodian or other qualified person verifying that the page had been maintained as a business record in the course of regularly conducted business activities.

Plaintiff has not provided any other theory or basis to find the YouTube video is admissible evidence.  Plaintiff has not made the Fed. R. Evid. 901(a) prima facie showing of genuineness that would allow for the video's admissibility.  See United States v. Broomfield, 591 Fed. Appx. 847, 851-52 (11th Cir. 2014); Carucel Investments, L.P. v. Novatel Wireless, Inc., 2017 WL 1215838, *19 (S.D. Cal. Apr. 3, 2017).

### 2. Plaintiff Is Entitled To Engage In Discovery Pursuant To The Federal Rules Of Civil Procedure

Plaintiff requests an opportunity to conduct discovery in order to respond to Defendant's Special Motion to Strike under the California anti-SLAPP statute.

The Ninth Circuit Court of Appeals has explained that provisions in the California anti-SLAPP statute that directly collide with the Federal Rules of Civil Procedure are not applicable.  Metabolife Int'l, Inc., 264 F.3d at 840.

In Metabolife Int'l, Inc., the appellate court found that the discovery-limiting portions of the anti-SLAPP statute conflict with the Federal Rules of Civil Procedure 56 and are inapplicable in federal court under the Erie doctrine.  Id. at 846 (citing Rogers v. Home Shopping Network, Inc., 57 F.Supp.2d 973, 980 (C.D. Cal. 1999)).

A plaintiff in federal court is entitled to engage in discovery when there is discovery available that may assist a plaintiff in responding to the defendant's special motion to

strike under the California anti-SLAPP statute.  Heller v. NBC Universal, Inc., 2016 WL 6583048, *9 (C.D. Cal. June 29, 2016); Flores v. Emerich & Fike, 2006 WL 2536615, *10 (E.D. Cal. Aug. 31, 2006) (citing Verizon Delaware, Inc. v. Covad Comm. Co., 377 F.3d 1081, 1091 (9th Cir. 2004)).

Defendant's Special Motion to Strike pursuant to the California anti-SLAPP statute is **HELD IN ABEYANCE** pending limited discovery to allow Plaintiff to respond to Defendant's anti-SLAPP Motion.

## CONCLUSION

Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) (ECF No. 26) is **DENIED.**

Defendant's Special Motion to Strike pursuant to the California anti-SLAPP statute (ECF No. 26) is **HELD IN ABEYANCE.**

The Parties shall meet and confer about the scope of the limited discovery necessary for Plaintiff to respond to Defendant's Special Motion to Strike pursuant to the California anti-SLAPP statute.

If the Parties are unable to come to an agreement, Plaintiff shall file a Brief of no more than ten (10) pages on or before Wednesday, February 28, 2018.  The Brief shall set forth the discovery that Plaintiff wishes to conduct in order to establish a reasonable probability that he will prevail on his defamation claim.

Defendant shall file a Brief in Response of no more than ten (10) pages on or before Wednesday, March 21, 2018.


IT IS SO ORDERED.

DATED: February 26, 2018, Honolulu, Hawaii.


Helen Gillmor
United States District Judge